February 4, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1947

DONATO F. PIZZUTI,

Plaintiff, Appellant,

v.

POLAROID CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Torruella, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Joseph J. Brodigan, with whom William D. Gardiner, James M.

Langan, and Langan, Dempsey & Brodigan, were on brief for

appellant.
Francis H. Fox, with whom Scott C. Moriearty, Marianne

Meacham and Bingham, Dana & Gould, were on brief for appellee.

TORRUELLA, Circuit Judge. This appeal arises out of a

summary judgment granted on behalf of Polaroid Corporation

("Polaroid") dismissing a breach of contract action brought by a

former employee, Donato F. Pizzuti ("Pizzuti").1 We affirm.

The crux of the lawsuit concerns the interpretation of

Polaroid's Profit Sharing Retirement Plan (the "Retirement Plan")

as well as that company's Employee Incentive Compensation Plan

(the "Bonus Plan") with respect to Pizzuti's contention that

Polaroid's employer contributions from April, 1976 to January,

1986 were undersubscribed. Pizzuti based this contention on the

winning and eventual settlement of a patent infringement suit by

Polaroid against Eastman Kodak Co. ("Kodak") pursuant to which

Kodak paid approximately $925 million in cash and short-term

securities to Polaroid for infringements occurring from 1976

through 1986. Pizzuti contends that those payments require the

restatement of Polaroid's profits for those years and in turn the

payment of the additional benefits and bonuses that would have

been received from these additional receipts.

Although Pizzuti objects to the granting of summary

judgment, we believe otherwise. This is a classic case for

summary judgment: no material facts are in dispute and

disposition is dependent only on the legal interpretation of the

Retirement and Bonus Plans. See Fed. R. Civ. P. 56. The

standard of review of the district court's decision is de novo,

1 Although originally brought as a class action in the
Massachusetts Superior Court, it was never certified as such
either by the state court or by the district court after it was
removed to the federal court.

as only issues of law are involved. ITT Corp. v. LTX Corp., 926

F.2d 1258, 1261 (1st Cir. 1991).

The Retirement Plan is a contribution plan as defined

in 3(34) of the Employee Retirement Income Security Act of 1974

("ERISA"), as amended, 29 U.S.C. 1002(34), and is thus subject

to construction pursuant to federal common law. Firestone Tire &

Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989). In construing

ERISA-governed plans, we apply "common-sense canons of contract

interpretation." Wickman v. Northwestern Nat'l Ins. Co., 908

F.2d 1077, 1084 (1st Cir.) (quoting Burnham v. Guardian Life Ins.

Co., 873 F.2d 486, 489 (1st Cir. 1989)), cert. denied, 111 S. Ct.

581 (1990). Although the Bonus Plan is governed by Massachusetts

law, the standard of interpretation is similar, requiring the

court to give nonambiguous terms their usual and ordinary

meaning. Ober v. National Casualty Co., 318 Mass. 27, 30, 60

N.E.2d 90, 91 (1945).

A reading of the Plan leads us to the same conclusion

reached by the district court: "[n]othing in the language of

either plan requires Polaroid to revisit a previously-determined

net profit and recalculate that figure based upon gains or losses

resulting from subsequent litigation, or any other source."

Pizzuti v. Polaroid Corp., No. 91-13018-H, slip op. at 2 (D.

Mass. July 9, 1992). Section 3.01 of the Retirement Plan

provides:

[T]he term "net profit" for any Plan Year
shall mean the total on a consolidated
basis of the net earnings of [Polaroid
and its subsidiaries] for such year

-3-

(excluding gains from the sale, exchange
or other disposition of capital or
depreciable assets not in the ordinary
course of business), as computed by
[Polaroid's] accountants in accordance

with standard accounting practices . . .

[Polaroid's] determination of such net
profits shall be conclusive for all

purposes under the Plan.

(Emphasis added.).

The undisputed evidence demonstrates that standard

accounting practices require that litigation judgments or

settlements may only be recognized as income in the year

received. This fact is reinforced by Polaroid's recognition of

the entire $925 million settlement amount as 1991 income,

notwithstanding that Polaroid undoubtedly would have benefited

under the tax code had it been allowed to redistribute this

settlement as proposed by Pizzuti.

Section 3.01 of the Bonus Plan also provides for

calculation of "net profits" on an annual basis "by the Company's

accountants in accordance with standard accounting practices,"

and also states that "[t]he Company's determination of such net

profit shall be conclusive for all purposes under the Plan."

There is nothing ambiguous in the indicated language of

the Plans. See ITT Corp. v. LTX Corp., supra at 1261 (whether

contract term is ambiguous is question of law for the court). It

requires that net profits be determined annually, on the year in

which the income is received, and that the Company's

determination in this respect is decisive and final as regards

the Plans. There is nothing more to be said.

-4-

The judgment of the district court is affirmed. Costs

to appellee.

-5-